OPINION. Withey, Judge: The petitioners each claim the right under section 23 (o)[2] of the Internal Revenue Code of 1939 to deduct from income for 1950 the amount of $450 paid by each of them to the Trustees for the Building Fund. In support of their position they urge that their payments to the trustees were irrevocable and, under the circumstances presented, resulted in the creation of trusts between them and the trustees; that pursuant to the provisions of such -trusts the Shriners’ Hospitals for Crippled Children and the Scholarship Fund of Michigan State College were designated irrevocably as the beneficiaries of the proceeds of the insurance policies; and that consequently the payments in question constituted completed gifts in 1950 “for the use of” qualified charitable and educational organizations within the meaning of section 23 (o). The respondent contends that the position of the petitioners cannot be sustained for the reasons, among others, that any interests acquired by Shriners’ Hospitals and the Scholarship Fund under the arrangements here involved were contingent and further that any gifts made by petitioners for the use of those organizations were revocable and that consequently no deduction therefor as a contribution was allowable. The subscription agreements or notes of the petitioners, in which the Hospitals and the Scholarship Fund were designated as beneficiaries “irrevocably,” expressly provided that the trust agreement between the fraternity and the trustees for the Building Fund was made part of the subscription agreements. Although Article 7 of the trust agreement provides that “Any funds that may come into the hands of said Trustees under the terms of any policy of insurance shall be disbursed as is provided in the subscription note,” Article 9 provides that “the original Subscriber and holder of an insurance policy may, at any time, without the consent of any prior Beneficiary, upon giving written notice to the Trustees” change the beneficiary. Standing alone the foregoing provision of Article 7 might indicate that only the beneficiary named in the subscription note, whether or not irrevocably designated, would be entitled to the proceeds of insurance. The foregoing provision of Article 9 standing alone might indicate that the original subscriber at will might change any previously designated beneficiary, whether or not such beneficiary had been irrevocably designated. A similar result might follow from a consideration of the provisions of the two articles taken together. Little aid in construing the foregoing provisions of the two articles is found in the action of the petitioners and the trustees with respect to the provisions. While in the subscription notes or agreements the petitioners requested that the Hospitals and Scholarship Fund be designated as irrevocable beneficiaries in the trustees’ certificates issued to the petitioners with respect to the insurance on their lives, and which expressly made the trust agreement part of the certificates, the certificates were issued by the trustees and accepted by petitioners without any expressed designation of irrevocability. On some undisclosed theory, which apparently was contrary to the position he takes here, the respondent, in determining the deficiencies, allowed deduction of the payments of $450 made by each petitioner to the extent of the amount of the premiums paid during 1950 on the insurance. In the foregoing situation and because of other provisions of the trust instrument, we do not deem it necessary for present purpose to determine the effect of the foregoing provisions of Articles 7 and 9 whether standing alone or taken together. The trust agreement contemplated that all premiums on life insurance policies should be paid from time to time by the trustees from funds in their hands. Under Article 14 of the trust agreement, funds for such purpose were to be provided by the fraternity. In the event of default by the fraternity the trustees were authorized to take over, manage and operate the property of the fraternity and, if the results of such operation were insufficient to provide sufficient funds, then, after default of a specific period, sell the property for whatever best price might be obtainable and make distribution to the beneficiaries as their interests might appear. Under Article 20 the trustees in no event were liable for the default of the fraternity or of any insurance company or any subscriber. Obviously, the continuance of the insurance arrangement was contingent entirely upon the fraternity or its property providing sufficient funds to pay the required insurance premiums. Article 23 of the trust agreement provided that it might be altered or amended by the agreement of the fraternity and the trustees with the consent of the subscribers, among which were petitioners, upon a majority vote of a quorum thereof. The language of the article contains no limitation as to the extent of any such alteration or amendment. Conceivably, under this article the trust agreement could be so altered at any time as to discontinue or eliminate the entire insurance arrangement. In view of what has been said heretofore, we are unable to find that as a result of the petitioners’.payments the Hospitals and the Scholarship Fund acquired in 1950 any greater interest than a mere expectancy, dependent upon the insurance provisions of the trust agreement continuing unaltered or unamended and contingent upon the fraternity continuing to provide funds for the payment of premiums, which could not vest until the expiration of 35 years or the prior deaths of the petitioners. Since in 1950 nothing vested in the Hospitals and Scholarship Fund and nothing vested “for their use” in the trustees for the Building Fund as a result of the petitioners’ payments, the petitioners did not make any gifts or contributions to them or for their use in that year. Accordingly, we hold that the payments in question were not gifts or contributions within the contemplation of section 23 (o) of the Code. Cf. Mortimer C. Adler, 5 B. T. A. 1063. Decisions will be entered for the respondent. SBC. 23. DEDUCTIONS PROM GROSS INCOME. In computing net Income there shall be allowed as deductions: ******* (o) Charitable and Other Contbkibutions. — In the case of an individual, contributions or gifts payment of which Is made within the taxable year to or for the use of: * - * * * * * * (2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or In any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which Inures to the benefit of any private shareholder or Individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise at- tempting, to influence legislation; (5) A domestic fraternal society, order, or association, operating under the lodge system, but only if such contributions or gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals ; * * * to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer’s adjusted gross income. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary.